FILED

02 OCT 23 AM 9:00

CLERK, US. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:00-cv-1165-J-25A |
| ) | |
| v. ) | |
| JACKSONVILLE HOUSING ) | |
| AUTHORITY and CITY OF ) | |
| JACKSONVILLE, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## JOINT MOTION AND MEMORANDUM OF LAW
## FOR ENTRY OF STIPULATED ORDER

On November 9, 2000, this Court entered a Consent Decree in the above-captioned case resolving claims brought by the United States against the Jacksonville Housing Authority and City of Jacksonville under the Fair Housing Act. The Court retained jurisdiction under the Consent Decree to address issues arising out of the implementation of its terms. Plaintiff United States and Defendant Jacksonville Housing Authority jointly move this Court for entry of an order to modify the Consent Decree as set forth below.

1.   Under the Consent Decree, the Jacksonville Housing Authority (JHA) is required to create 225 new public housing units in areas of Duval County, agreed to by the parties, that are outside of Northwest Jacksonville and do not currently have public housing. The JHA is required to occupy 75 units by 2002, 75 more units by 2004, and the final 75 units by 2006. The Consent Decree sets forth various formulas for identifying the maximum number of public housing units allowed at each site.

31

2. In compliance with its obligations under the Consent Decree, the JHA created and occupied 84 new public housing units during 2002 and is in the process of identifying sites for the remaining 141 public housing units to be occupied by 2004 and 2006.

3. Under Paragraph 11 of the Consent Decree, the JHA may create public housing units in any of three ways by

    1) constructing new housing;

    2) purchasing existing apartments; and

    3) entering into long-term leases of apartments in existing complexes.

Each alternative provides a limit on the number of units that may be located at each site ranging from 60 to 100 units or 25% of the total units, depending on the alternative utilized. Thus, if the JHA constructs new public housing, then it has agreed not to construct more than 60 units at any one site. If the JHA purchases an apartment complex, then 25% of the units in existing apartment complexes can be converted to public housing. The Decree also provides that the JHA may offer new public housing units by entering into long term leases for up to 25% of the total units at a development with a maximum of 100 units per site. For those sites where the public housing units are a percentage of the total apartments, than the public housing units must be dispersed throughout the complex. The parties agreed to this framework in order to ensure that the public housing opportunities created pursuant to the Consent Decree are not concentrated in any one area or complex.

4. Since entry of the Consent Decree by this Court, additional funding options have been made available by the United States Department of Housing and Urban Development (HUD) for public housing authorities, such as JHA, to create subsidized housing for low-income households. Additionally, the parties have learned during the last two years of on-going efforts by JHA to

purchase existing apartment complexes and convert a portion of the units to public housing, that financing requirements imposed by lending institutions for such purchases make it financially onerous for the JHA to purchase smaller apartment buildings or complexes with less than 110 units and then limit the number of public housing units at these smaller sites to 25% of the total apartments. These funding options and financing requirements either were not available to JHA in November 2002 or were not known by the parties at the time the Consent Decree was negotiated. In light of these changed circumstances, the parties seek to permit the JHA to utilize these alternative funding sources to create some or all of the remaining 141 public housing units.

    5.    The parties ask the Court to make the following two modifications to the Consent Decree:

        a)    Add the following sentence to the definition of "Public Housing" contained in Paragraph 1(h):

> This includes individual units subsidized through the JHA Annual Contributions Contract or Section 8 vouchers as long as 1) the tenants have all the procedural and substantive due process rights that any JHA public housing tenant currently has and 2) all other conditions for occupancy required by this Decree are met.

        b)    Delete Paragraph 11(b) and replace it with:

> 1) Not more than 25% of the housing units purchased at any one site or complex are converted into public housing; or 2) the site contains less than 110 units and is located in one of the following census tracts: 168.06, 168.05, 168.04, 168.02, 168.01, 167.23, 167.22, 167.21, 167.12, 167.11, 166.02, 165, 160, 159.22, 159.21, 158.01, 146.01, 144.05, 144.04, 143.28, 143.27, 143.26, 143.25, 143.24, 143.22, 143.11, 141.02, 141.01, 140, 137.25, 137.24, 137.23, 137.21, 135.22, 131, 130, 129, 124, 123, 119.02, 106, 102.02, 102.01, 101.03, 101.02, 101.01, 24, 23, 22, 21, 8 and 3) units at an existing site or complex that are converted to public housing are dispersed throughout the site or complex.

6. As is set forth in the accompanying Memorandum of Law, this Court has jurisdiction to enter such an Order, and entry of the Order would facilitate the goals and purpose of the Consent Decree.

## MEMORANDUM OF LAW

### Discussion

This Court has jurisdiction pursuant to the Consent Decree entered on November 9, 2000, to ensure compliance with the terms of the Consent Decree, and to assure adherence to the Fair Housing Act, 42 U.S.C. Section 3601 et. seq. The Consent Decree, entered after presentation by the parties and review by this Court, was intended to ensure that the Jacksonville Housing Authority and the City of Jacksonville adhere to the requirements of the Fair Housing Act, and remedy their failure to construct housing in a timely way and expand opportunities for public housing residents in Duval County as they agreed to do when the public housing units at Blodgett Homes were demolished. The parties' proposed modifications to the Consent Decree do just that.

Pursuant to the Fair Housing Act, public housing may be placed in any location consistent with federal law and HUD public housing regulations. Among other factors, this includes an obligation to select sites which do not create or perpetuate segregated housing patterns or make housing unavailable on the basis of race. Jackson v. Okaloosa County, Florida, 21 F. 3d 1531, 1542-1543 (11th Cir. 1994); United States v. Parma, 661 F.2d 562, 568 (6th Cir. 1981) *cert. denied* 456 U.S. 926 (1982); United States et al. v. Yonkers Bd. of Edu. et al., 837 F.2d 1181, 1219 (2nd Cir. 1987) *cert. denied* 486 U.S. 1055 (1988).

In the Consent Decree, the parties agreed to limit the number of units of public housing to be created at each particular site in order to further the purpose of the Fair Housing Act, ensure the

free and open placement of public housing, and encourage the creation of public housing in areas where no public housing currently exists. Indeed, the Consent Decree, provides various alternatives for creating public housing. Consent Decree, Paragraph 11.

Moreover, the Consent Decree also provides;

> [t]he parties and their attorneys agree to work cooperatively with one another and in good faith and to use their best efforts to ... resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution, and to effectuate the purposes of this Consent Decree.

Id., Paragraph 6.

The Decree currently contains the following definition of "Public Housing":

> "housing units owned by and fully subsidized through the JHA that are made available to low income individuals and families and are not specifically reserved for elderly persons."

Id., Paragraph 1(h). As presently stated, the phrase "owned by and fully subsidized through the JHA" limits the JHA to public housing funded by its Annual Contributions Contract (ACC) with HUD. At the time the parties negotiated this definition, housing authorities generally could not use Section 8 rental assistance vouchers at a particular geographic location to create subsidized housing and were limited to using funding through the ACC to create public housing units. However, since November 2000, HUD modified the Section 8 voucher program to permit housing authorities to use Section 8 vouchers at specific geographic locations as one mechanism for creating subsidized housing. The parties seek to use this new funding source and jointly move the Court to add the following sentence to the Decree's definition of public housing:

> This includes individual units subsidized through the JHA Annual Contributions Contract or Section 8 vouchers as long as 1) the tenants have all the procedural and substantive due process rights that any JHA public housing tenant currently has and 2) all other conditions for occupancy required by this Decree are met.

5

Additionally, the parties seek to add an alternative mechanism to the Decree for the JHA to purchase existing multi-family units in Duval County and convert them to public housing. Currently, the Decree only permits the JHA to convert to public housing no more than 25% of housing units at any one site or complex it may purchase, <u>regardless of the total number of units at the site</u>. Consent Decree, Paragraph 11(b)(1). After two years of good faith efforts by the JHA to comply with the Consent Decree, including exceeding the Decree's requirement of creating at least 75 new public housing units by 2002, the parties have learned that lending institutions' requirements for financing such purchases make it financially onerous for the JHA to purchase smaller apartment complexes and convert only 25% of the units to public housing. Thus, the parties seek to modify the Decree to permit the JHA to exceed the 25% cap for apartment complexes with less than 110 units that are located in specifically enumerated census tracts. The census tracts included in the parties' proposed revised language are located outside Northwest Jacksonville and do not currently have public housing located in or near them. Specifically, the parties propose deleting Paragraph 11(b) and replacing it with the following language:

> (B) 1) Not more than 25% of the housing units purchased at any one site or complex are converted into public housing **or** 2) the site contains less than 110 units <u>and</u> is located in one of the following census tracts: 168.06, 168.05, 168.04, 168.02, 168.01, 167.23, 167.22, 167.21, 167.12, 167.11, 166.02, 165, 160, 159.22, 159.21, 158.01, 146.01, 144.05, 144.04, 143.28, 143.27, 143.26, 143.25, 143.24, 143.22, 143.11, 141.02, 141.01, 140, 137.25, 137.24, 137.23, 137.21, 135.22, 131, 130, 129, 124, 123, 119.02, 106, 102.02, 102.01, 101.03, 101.02, 101.01, 24, 23, 22, 21, 8 **and** 3) units at an existing site or complex that are converted to public housing are dispersed throughout the site or complex.

(Emphasis added).

**Conclusion**

The United States of America and the Jacksonville Housing Authority respectfully move this Honorable Court for the entry of an Order modifying the Consent Decree as described above.

|  | Respectfully Submitted, |
|---|---|
| For the United States: | For Defendants Jacksonville Housing Authority and City of Jacksonville |

| | |
|---|---|
| RALPH F. BOYD, Jr.<br>ASSISTANT ATTORNEY GENERAL | RICHARD A. MULLANEY<br>GENERAL COUNSEL |
| *Diane L. Houk* (signature) | *Cindy Laquidara* (signature) |
| DIANE L. HOUK<br>Special Litigation Counsel<br>CATHERINE A. BENDOR<br>Trial Attorney<br>U.S. Department of Justice<br>950 Pennsylvania Ave. N.W. - G St.<br>Civil Rights Division<br>Housing and Civil Enforcement Section<br>Washington, DC 20530<br>Tel. (202) 514-4305<br>Facsimile: (202) 514-1116 | CINDY LAQUIDARA<br>Chief Deputy General Counsel<br>Florida Bar No.: 0394246<br>VIRGINIA B. NORTON<br>Assistant General Counsel<br>Florida Bar No.: 0124397<br>Office of General Counsel<br>117 West Duval Street, Suite 480<br>Jacksonville, FL 32202<br>Tel. (904) 630-1841<br>Facsimile: (904) 630-1731 |